John H. Bissell v. Edgar O. Durfee, Judge of Probate for Wayne County.

*Probate and official bonds.*

1. Executors' bonds are not such official bonds as will fall within the title of Act 179 of 1885, " to provide that all sureties upon official bonds shall make justification under oath, of their pecuniary responsibility." Nor are any probate bonds.

2. The constitutional provision which confines statutes to the purview of their titles is for the purpose of preventing the Legislature as well as the people from being misled as to their contents.

3. Bonds referred to in the statutes of Michigan as " official " are, *it seems,* bonds of public officers only.

Mandamus.    Submitted Oct. 13.    Granted Oct. 14.

*James C. Smith, Jr.* and *John H. Bissell,* in person for relator, claimed that Act 179 of 1885, purported by its title to relate only to official bonds, and could not therefore cover those of an executor : see *Underwood v. McDuffee* 15 Mich. 366 ; *Shurbun v. Hooper* 40 Mich. 505 ; *Throop v. Langdon* id. 682 ; *Spencer v. Perry* 18 Mich. 399.

*Edwin F. Conely* for respondent.

Campbell, J.    Relator applies for a mandamus to compel the probate judge to accept an executor's bond which the judge states he would feel bound to accept as sufficient were it not for statute No. 179 (page 244 of the Laws of 1885), which it is claimed imposes new conditions upon such instruments.    That statute is entitled "An act to provide that all sureties upon official bonds shall make justification under oath of their pecuniary responsibility."

The body of this statute is made broad enough by its terms to apply to every kind of bonds which are required to be approved by any court or officer, and would include appeal and license bonds and multitudes of others which have

nothing to do with any office or agency, public or private. It requires sureties to swear, under penalties of liability for perjury, that they are "worth in unincumbered property not exempt from execution under the laws of this State, the penal sum thereof, after payment of all just debts, claims and liabilities." The statute further imposes criminal responsibility by making it a misdemeanor to accept or approve any bond not so justified, and imposing on the persons so accepting or approving it, a personal liability for all damages resulting to any one from such approval.

It is claimed by relator that under the Constitution this statute cannot be made to apply to anything not covered by its title, and that the title does not cover any but bonds of public officers.

There is no doubt, under the Constitution, that the only bonds covered are official bonds. Had the body of the statute been confined to persons filling those ambiguous positions which depend on the appointment of the public or some of the public functionaries, it is possible that such enumeration might be regarded as a legislative definition of what was meant by the term "official." But we need not determine how far this could be done. As the object of confining acts to the purview of their titles is to prevent the Legislature as well as the people from being misled as to their contents, it is manifest that a definition might be so far from the natural meaning of the title as to be quite as deceptive as any other variance. In the present case there are no such definitions given, and as already pointed out, the body of the act contains no reference to any particular class or classes of bonds, but covers every bond contemplated by law for any purpose.

The question, then, is narrowed to the inquiry whether a probate bond is an official bond within the ordinary and recognized meaning of that term, as applied to such instruments.

It may perhaps be found that for want of a more convenient phrase, the term "official" is sometimes applied to persons holding fiduciary positions, to distinguish their transactions in such relations from their purely private business. But the statutes which provide for official bonds, as such, are

very clearly confined to the bonds of public officers. Chapter 284 of Howell's Statutes, which is chapter 120 of the Revised Statutes of 1846, was entitled "Suits against sheriffs and other officers on their official bonds," in that revision, and is by Judge Howell changed to "Suits against sheriffs and others on their official bonds." But this change is not, —even if made by the Legislature, which it was not,—of any significance, because the chapter refers in its body to none but public bonds. While not authoritative, some weight should be given to the unbroken practice which has prevailed since the State was organized, of making in the indexes of the laws a separate heading of "Official Bonds," under which none but the bonds of public officers and agents have ever been classed, while all kinds of probate bonds have invariably been put under another heading. The Revision of 1846 has a separate chapter (No. 75) entitled "Of probate bonds and the prosecution of them," which is found in its amended form in Howell's Revision (chapter 227), in which all kinds of probate bonds are dealt with together, and made subject not only to the same methods of prosecution, but also to discharges and renewals under the judge's discretion. We have found no legislative recognition, even casual, of any such bonds as official.

We cannot conceive that under such a title as that of the statute of 1885 it could be fairly supposed that such revolutionary changes would be introduced as would follow from the construction that would reach probate bonds. The ample discretionary power over them now given by law was found necessary to secure competent and faithful parties to execute their trusts. If under this title all such bonds are included, it would also include all other court appointees, and might repeal by implication a great multitude of provisions which probably never occurred to the Legislature. The constitutional requirement confining the operation of laws by their titles should be honestly carried out. In our opinion it would be a great perversion to extend it to such bonds as are involved here.

It is only proper to say that in the present case the respon-

dent has made no effort to do more than ascertain his own
duty, and is to be commended for taking as early an oppor-
tunity as possible to have the matter fairly presented.

The mandamus must be awarded as prayed, without costs.

The other Justices concurred.