*573
 
 Holcomr, J.
 

 Respondent brought action and got judgment in the lower court against a commission merchant, doing business under the corporate style of International Fruit & Produce Co., and Indemnity Insurance Company of North America, a corporation, its surety, or guarantor, for a balance of $652.48 for fruit and produce shipped to the commission merchant to be sold by it on a commission basis and for which it had not accounted, and $100 attorney’s fees.
 

 The complaint alleges the corporate existence of the International Fruit
 
 &
 
 Produce Co. and that it was doing business as a licensed commission merchant in Seattle under the provisions of chapter 194, Laws of 1925, Ex. Ses., p. 586, and amendments thereto, being Rem. 1927 Sup., §§ 8292 to 8302-1; that the Indemnity Insurance Company of North America, a Pennsylvania corporation, engaged in the business of issuing surety bonds in Seattle, executed a bond under the above statutes wherein the International Fruit & Produce Co. was principal and the insurance company was surety, by the terms of which the parties thereto bound themselves in the penal sum of $5,000 for the benefit of all consignors having a cause of action against the principal; that the bond, by its terms, was applicable to a license period beginning January 1, 1928, and ending December 31, 1928, and was on file with the state department of agriculture. A copy of the bond is attached to the complaint as an exhibit.
 

 The complaint also alleges that, between September 7, 1928, and November 27, 1928, a quantity of fruit and produce was delivered to the commission merchant to be sold by it on a commission basis in the usual course of its business as a licensed commission merchant; an allegation was then made of the total value of fruit and vegetables so shipped and the net value thereof as sued for; that a statement showing such
 
 *574
 
 sales, together with the net amount due respondent, was rendered it several times between the above dates, and that thereafter respondent immediately demanded payment of the net sum due him, which payment was never made, though frequently demanded, and no part of the net amount due has ever been paid respondent; that, by failing and refusing to pay respondent the sum due for the sale of the produce, the commission merchant had violated its duty as such merchant as prescribed by the statutes, and that $150 was a reasonable attorney’s fee to be allowed in accordance with the foregoing statutes.
 

 To the complaint, the insurance company filed its answer by which it denied that the produce company was doing business as a licensed commission merchant; that the bond was applicable to the license period beginning January 1, 1928, and ending December 31, 1928; that $150, or any sum, was a reasonable sum to be allowed respondent as an attorney’s fee; and denied, on information and belief, the consignment of fruit and produce to the produce company and the amount alleged to.be due respondent. It also set up an affirmative defense substantially alleging the cancellation of the bond given by it as surety to the produce company as principal on June 5, 1928, and that at that time the produce company was indebted to the insurance company in a sum of money greatei than the amount of unearned premium returnable on the bond for the period from June 5, 1928, to January 1, 1929. It prayed that the complaint of respondent be dismissed and have judgment in its favor against respondent for its costs. The allegations of the affirmative defense were denied by reply.
 

 The produce company failed to appear in the case and order of default was entered against it before trial.
 

 
 *575
 
 Upon the trial of the issues, as made, the court found for respondent for two reasons: (1) That there was no proper service of the notice of cancellation of the bond; and (2) that the necessary proceedings to cancel the bond were not had.
 

 While the material findings and the conclusions made by the court in favor of respondent and the refusal of findings and conclusions tendered by appellant are excepted to, the only questions involved on this appeal, as stated by appellant, are these: (1) Is a commission merchant’s bond subject to cancellation by the surety; and (2) If so subject to cancellation, was the bond in the present case canceled?
 

 The statutes above cited respecting commission merchants contain no provision for cancellation of the bond. They do provide the method of action necessary to revoke the license upon complaint of a consignor to the director of agriculture (§8299), but afford no method whereby the surety company can institute proceedings to assure such a revocation. It is said that in this respect our act differs from commission merchants’ acts in other states.
 

 Our general statutes with reference to surety bonds are relied upon as authorizing the relief here sought. They are as follows:
 

 “Any company executing any bond, recognizance, obligation, stipulation, or undertaking, and any such surety may be released from its liability on the same terms and conditions as are or may be by law prescribed for the release of individuals upon any such bond, recognizance, obligation, stipulation, or undertaking; . . . ” Eem. Comp. Stat., §7248.
 

 “Any surety on the official bond of any state, county, or city officer, or on the official bond of any executor or administrator, or on the bond or undertaking of any person where by law a bond or undertaking is required, may be released from all liability thereon ac
 
 *576
 
 cruing, from and after proper proceedings had therefor, as provided in this chapter.” Rem. Comp. Stat., § 9942.
 

 “Any surety desiring to he released from liability on the bond of any state officer shall file with the governor or secretary of state a statement in writing, duly subscribed by himself, or some one in his behalf, setting forth the name and office of the person for whom he is surety, the amount for which he is liable as such, and his desire to be released from further liability on account thereof. A notice containing the object of such statement shall be served personally on the officer, unless he shall have left the state, in which case the same may be served by publication for twenty days in some newspaper printed at the seat of government, or if none be printed there, then in such newspaper as shall be designated by the governor or secretary of state . . . Any surety desiring to be released from any other official bond or undertaking shall file and serve a similar statement with the proper officer, person, or authority. All statements provided for in this section must be served as in the first clause of this section provided: Provided, the same, if served by publication, may be published in the newspaper in the same, or if no newspaper be published therein, then in an adjoining or other county, without any order from any court or other authority; Provided further, in all cases for which publication is provided, a printed or written notice posted in at least ten conspicuous places in the county for the time specified shall be deemed legal notice thereof.” Rem. Comp. Stat., §9943.
 

 “If any officer or person shall fail to file, within ten days from the date of personal service, or within thirty days from the date of the first insertion of a publication or posted notice, a new or additional bond or undertaking, the office or appointment of the person or officer so failing shall become vacant, . . . and the person applying to be released from liability on such bond or undertaking shall not be holden or liable thereon after the date herein provided for the vacating and forfeiting of such office or appointment; . . .
 
 ’ ’
 
 Rem. Comp. Stat., § 9944.
 

 
 *577
 
 A case from Indiana is cited,
 
 United States Fidelity & Guaranty Co. v. Poetker,
 
 180 Ind. 255, 102 N. E. 372, and the following quotation made:
 

 “It has been frequently decided in this state that bonds taken pursuant to a requirement of a public statute are official bonds within the meaning of this section of the statute.”
 

 It is then asserted that, even if the statutes relating to official bonds are not applicable, this bond is still subject to cancellation by the surety in accordance with the well accepted principles of the common law of guaranty and suretyship; that this is implied in the decision in
 
 Dunn v. Bailey,
 
 143 Wash. 570, 255 Pac. 930, and by the cases therein cited. With the last contention, we cannot agree, this being a guaranty bond by a compensated surety.
 

 In that case it was suggested by counsel, but not decided by us, that the case was controlled by the statutes relied upon by appellant here providing for relief from liability of a surety on a bond. It was there said:
 

 “It seems to be admitted that the body of that act is sufficiently explicit to cover this kind of a bond; but it is claimed by the appellant that its provisions in that respect are invalid because they are not expressed in the title of the act, as required by § 19, art. 2 of the state constitution, the title of the act being ‘An act providing for the release of sureties on official bonds and undertakings.’ That is, that the bond in this case is not an official bond as contemplated by that act.”
 

 A decision upon the question of the application of the statutes relied upon by appellant was unnecessary in that case, and was therefore passed because of the fact that the surety company in that case had not given reasonable notice of withdrawal.
 

 We think there is at least one insuperable obstacle to the application of the statutes relied upon by ap
 
 *578
 
 pellant. The title of the act is not broad enough to cover this class of bonds.
 

 Whatever may be the state of the law in Indiana, we have here a constitutional provision, § 19, Art. II, requiring that
 

 “No bill shall embrace more than one subject, and that shall be expressed in the title.”
 

 The title of the act enacting the legislation relied upon by appellant is “An act providing for the release of sureties on official bonds and undertakings.”
 

 In
 
 Bissell v. Durfee,
 
 58 Mich. 237, 24 N. W. 886, upon statutes relating to sureties on official bonds, it was contended that, under their constitutional provision, the statute could not be made to apply to anything not covered by its title, and that the title did not cover any but bonds of public officers. That court said:
 

 “There is no doubt, under the constitution, that the only bonds covered are official bonds. Had the body of the statute been confined to persons filling those ambiguous positions which depend on the appointment of the public or some of the public functionaries, it is possible that such enumeration might be regarded as a legislative definition of what was meant by the term ‘official.’ But we need not determine how far this could be done. As the object of confining acts to the purview of their titles is to prevent the legislature as well as the people from being misled as to their contents, it is manifest that a definition might be so far from the natural meaning of the title as to be quite as deceptive as any other variance. In the present case there are no such definitions given; and, as already pointed out, the body of the act contains no reference to any particular class or classes of bonds, but covers every bond contemplated by law for any purpose.”
 

 It was there held that the bonds in question did not come within the definition of “official” bonds.
 

 A commission merchant can by no stretch of the imagination be considered as an officer, and a bond
 
 *579
 
 guaranteeing his transactions to those selling through him can in no sense be considered an official bond. (Compare
 
 Russell v. Chicago, Burlington & Quincy R. Co.,
 
 37 Mont. 1, 94 Pac. 488, 501, and
 
 State ex rel. Urton v. American Bank & Trust Co.,
 
 75 Mont. 369, 243 Pac. 1093.) It is, however, a statutory bond limited in amount and limited in time to the end of the' calendar year. Within those limits, it is a continuing guaranty.
 

 Hence, we conclude that the commission merchant not being an officer, and the bond not being an official bond or undertaking, the statutes relied upon by appellant are unavailing.
 

 Appellant argues that it did everything it could do: it notified the officer of the state whose duty it was to see that the interests of the public were protected. Through him, it notified the other party to the contract; both the representative of the state and the other party received the notice and acted upon it; the statute required no further notice and there was no possible notice to the public that the surety company could give; that the surety company could not move in any way to deprive the produce company of its broker’s license; that the statute had left that matter entirely in the hands of the consignors or the department of agriculture; that the department of agriculture gave the produce company a reasonable time in which to provide a new bond; it accepted the period of thirty days as a reasonable time, but did not furnish the bond; that it was the duty of the department of agriculture to see to it that after that date the produce company did no more business as a commission merchant; that it was also the duty of the produce company to cease doing business as a commission merchant after the expiration of the thirty-day period, because it knew that its bond had been canceled and
 
 *580
 
 that it was not complying with the commission merchants’ law; that the indemnitor cannot compel the’ department of agriculture to act, nor can it deprive the indemnitee of its license, nor even start proceedings to that end.
 

 It may be conceded that thirty days was a reasonable time to give the produce company in which to provide a new bond. It must also be granted that, so far as the statutory proceedings are concerned for the revocation of a broker’s license, it is entirely in the hands of the consignors and the department of agriculture ; but the license was outstanding when respondent dealt with the produce company. No one had moved to compel the cancellation of the license,.and the courts are always open to all parties interested to compel the cancellation of obligations which should no longer be effective or obligatory and the revocation of licenses which should no longer be outstanding. Immediately upon the expiration of the thirty days given by the department of agriculture to the commission merchant to procure a new bond in order to keep its license in force, upon failure so to do, appellant could have brought an action to enjoin the commission merchant from continuing in business under its bond, which it did not do. During that time, its principal continued in business with an outstanding license so to do and incurred liability to third parties. Until the license was revoked and the bond released, third parties doing business with the commission merchant, at least until the end of that calendar year, under the statute, were entitled to statutory relief. That was what was granted in this case and we conclude it was rightfully granted.
 

 The judgment is affirmed.
 

 ' Mitchell, O. J., Fullerton, Main, and French, JJ., concur.